Here he, here he, is Honorable Kevin Fork from the 2nd City Additional District, is now open. The Honorable Christopher M. Kennedy is up. Good morning everyone. Please be seated. Your Honor, the first case on the docket this morning is 2-24-0780. The State of Dorothy J. Frain, Petitioner or Appellate. The Rumawewa Antonio Respondent's Appellee. Arguing on behalf of the Appellant, Mr. Mark L. Evans. Arguing on behalf of the Appellee, Mr. Scott Carson. Alright, Counsel, Mr. Evans, you may begin when ready. Please feel free to adjust the microphone. Both of you, just to make sure we can hear you. Thank you, Your Honor, and to the panel. First and foremost, I'd like to thank everyone for giving us the opportunity to speak here today. It's a rare thing that we get to do this and it's kind of a treat for us attorneys. So I'm happy to be here and glad to have the panel indulging for... Wait until the end to decide whether or not it is a treat. Of course. So if it pleases the Court, I'll jump right in. This case is about whether the decedent, Dorothy Frain, included Antonio Villanueva, the Respondent, as a joint account holder with the right of survivorship on one of her bank accounts at Fifth Third Bank. That's Fifth Third checking account ending in 1842. We just refer to that as the 1842 account. And as the issue comes to this court under the manifest way to the evidence standard, we ask whether the trial court could have found, could have determined, that the decedent did add Antonio as a joint account holder with the right of survivorship based on the evidence that was presented at the hearing. The estate, of course, believes that the court could not have made that determination under the standard for the simple reason that no written agreement creating a right of... There was no signature card? Yes, Justice. There was a signature card and I'm sure you all have seen it. The signature card describes the account as individual and it's not signed by the decedent, Dorothy. There's a notation on the card that says signature on file. And as we get into the standard that's created under the Act, it's clear that the requirement is that there be a signed writing creating the right of survivorship. That signature has to appear at the time the account was created or thereafter. Obviously, when the signature is on file, it's referring to something that happened before. It's not a signed writing created at the time or thereafter. But aren't these digital signatures now? I mean, we enter orders all the time with a digital signature and most people abide by them, even though the signature was created before the order was entered. Well, let me... Isn't that what we're talking about today, that most of these signatures are digital? I don't think that looking at the signature card, there's nothing on here indicating that this card actually was signed digitally or otherwise. And, you know, as we talk about digital signatures in today's world, I will remind the Court that this signature card was created in 2017. This was some time ago. That wasn't the Middle Ages. Of course not. However, the Joint Tenancy Act is to be strictly construed. There's no dispute that it requires a signature, again, at the time or thereafter. Whether we can fashion some sort of argument that this is a digital signature and it stands in as Dorothy's actual signature, there has to be some evidence of that. There was no testimony during the hearing that Fifth Third Bank ever treated this as a digital signature. There was obviously no... There was clearly evidence that they treated it as a joint account. There was. How did they get there without a signature? Respectfully, Fifth Third Bank got there incorrectly. So they were wrong in the way they treated the bank? I'm sorry, treated the account. Pardon me. The way the bank treated the account was absolutely wrong. And I can point you to Mr. Larson's testimony. He was the bank executive that testified. He stated that at Fifth Third Bank, if there's two signers, each of them have equal access to the account. So, yeah, to me, when one person dies, the other is still living, that person is now the sole owner of the account. And it appears that Fifth Third sort of took that reasoning and, in their books and in their determination, treated this as a joint account with or without a survivorship. But what Mr. Lunsford said is not a correct recitation of the law under the Joint Tenancy Act. Again, that act is to be strictly construed. It requires a signed writing that establishes a right of survivorship expressly. And without that, there can be no joint tenancy with a right of survivorship. But if this was signed, I think it's PX1 or, you know, the card, whatever you want to use, a signature card. If this was signed, then it would, it does clearly say joint account with a right of survivorship. I disagree with that. What it clearly says is that it's an individual account. Joint accounts shall be owned as joint tenants with rights of survivorship, not as tenancy by the entirety. Correct. You're right there. It does say elsewhere it's individual. I get it. But there's certainly a better argument that if it's signed, and again, if it's signed at the time it's opened or thereafter, then you disagree, I guess, that this says clearly enough that it's joint tenancy with the right of survivorship. I do disagree. And for the simple reason that under the – If it wasn't joint tenancy – excuse me for interrupting. Please feel free to pick that up. If it's not joint tenancy, then what is it? The distinction is the right of survivorship. No, I get it. So if it's not a joint tenancy, what – does Mr. Villanova have any interest in the account? He does and he could have an interest in the account as a joint – Tenant in common? Well, not necessarily as a tenant in common. Why not? Because the statute says that – let's see. You can't have joint tenancy in personal property. It's abolished. And all such joint tenancies are deemed tenants in common. However, the foregoing shall not be deemed to impair the rights, privileges, and immunities. And it sets out what seems to me what I would describe as exceptions. It seems to me – and again, you tell me because you've studied often, you're ready to tell me – that if you do it wrong, it's not that you're not an owner at all, it's that you're a tenant in common. But if you do it right, you can get around this public policy that discourages or does not favor joint tenancies with the right of survivorship in personal property. And so then one of the exceptions is bank account, if there's a signature, or actually the statute says, is signed by all those persons at the time it's open or thereafter. So it just seems to me that you think I'm wrong and I'm excited to hear why. That if it's not properly signed and can't come within this exception in sub A, then I'm mistaken. It wouldn't be a tenancy in common. It would be something else, and now I give you the floor. And thank you for that explanation. I don't think you are wrong, Your Honor. I think, again, the distinction is the right of survivorship. And with a joint tenancy with the right of survivorship, that is what the Act abolishes, subject to the exception. If it doesn't fall into the exception, you do have some sort of other joint interest, and that could be an interest up to a tenancy in common without the right of survivorship. Let me go to some language here from the Rozicki case. If I can get you the full case name. That's Rozicki v. Sroka, 303rd, page 744. And the court there said that the, and I'm quoting, the relationship established by a joint bank account is not that of a joint tenancy, but rather is one which is governed by the provisions of the agreement between the bank and the depositors. So a joint bank account is really a contractual relationship between the bank and its depositors. It could say anything from Mr. Villanueva has the right to deposit funds and to withdraw funds as long as Dorothy is alive. It can give, sometimes we call it a convenience account. He has the right to access the account merely for convenience, but not an ownership interest in the account. So what the bank's policy and what the contract between the bank and the account holders cannot do is circumvent the Joint Tenancy Act. They can't reestablish the right of joint tenancy with the right of survivorship, which has been abolished. So whatever the signature card does, if it does not comply with the statute, and again, strictly construed, if it does not comply with that statute, it does not establish a joint tenancy with the right of survivorship. It may very well establish some other relationship which allows, again, the respondent some rights to the funds in the account, but whatever those rights are fall short of a joint tenancy with the right of survivorship. Thank you. So is, first of all, is there a statutory requirement that the signing be contemporaneous? Absolutely, Judge. And the statute itself, and this is in subsection A, the exception dealing with deposit accounts, it applies when an agreement, and I'm quoting, when an agreement permitting such payment, referring to a payment to the other account holder after the first one has passed away, permitting such payment is signed by all those persons at the time the account is opened or thereafter. And there's really all the cases that both sides cite. Interpreting that statute really didn't mean exactly what it says. Under the Conforce case, the court basically recited that language. Such a payment to a surviving account holder can be permitted if signed by the person's name in the account at the time the account is created or if such document is signed by the person's name on the account thereafter to that effect. So, yes. And the thereafter refers to the decedent in this case? Well, the statute requires both persons sign it. The facts that are here today, there's no dispute that Mr. Villanueva signed the signature card. The issue is that Dorothy did not. All right. And are we supposed to look at the intent of the signer here or the decedent, really? Is there a requirement that we look at this as if this is a grant or some other type of right? I think the intent of the decedent is irrelevant here. And the reason, again, is because under the statute, this is strictly construed. One of the cases that was cited, and that's the Flay v. Webena case, talks about there being really a heightened requirement here, and that's what this is. This isn't just a contract. Obviously, we understand that a contract can be valid, enforceable. If it's not written, if it's not signed, there's ways to prove the existence of an agreement between two parties. But the statute requires more than just a contract. It certainly can't be an oral contract. It clearly has to be written. But the statute also requires a signature. And the rationale behind that, the Flay v. Webena court talks about the fluctuating res of the bank account. It's not a fixed asset. The court talks about securities in a corporation. You have a known number of shares. If I want to give these securities to somebody as a joint tenant with the right of survivorship, I know exactly what I'm giving them. When I add somebody to a bank account, that account could have $1 in it at the time. At the time when they pass away, it could have $1 million in it. So the court says we have a little bit of a heightened standard here. We have to have that signed writing. So the intention is really irrelevant. I can sit here all day and say, hey, I intend to give somebody access to my bank account. I intend to make them a joint account holder. But unless I sign something in writing, my intention is not relevant. It has not been effectuated as required by the statute. Any other questions? No. All right. Thank you, counsel. You will have time. Good. Thank you. Thank you, Ernest. All right. Mr. Larson, you may begin when ready. First, please, the court. I'd like to also thank the court for the opportunity to argue. If I appear highly nervous or stuttering, I've been practicing law for 31 years, but I've never argued before the appellate court. I've submitted briefs. I've done things on the brief. But this is the first time I've ever been granted oral argument. Welcome to Elgin. Thank you. I've been to the branch court many times, but no oral argument. Please, the court. You have all touched on several issues that I think are right on point. Justice Jordansen, you talked about the fact that the signature cards are similar to digital cards and so on. And I believe Justice Mullen, you talked about the fact that some of the – oh, I'm sorry, it was Justice Kennedy who talked about the fact that do the signatures have to be contemporaneous. I would touch on that point and say, no, there's nothing that says that. The statute states that when an agreement permitting such payment is signed by all those persons at the time the account is opened or thereafter. And so it doesn't say that the person who originally opens the account in 1982, as here, has to re-sign the account when her partner is added to the account in 2017. Nothing in the case law says that. And, in fact, I believe in the Regal Group's opinion, in fact, it says that – I believe this was on about page 597. We find – and, again, this is a Justice McClaren's opinion, which I would argue is a well-written opinion. We find that the evidence established that the decedent intended to make Wenberg a joint tenant and did so by having her sign a signature card stating that the account was in joint tenancy. And the signature card itself, as Justice Jorgensen pointed out, does say individual, but there was obvious testimony by the banking technician. Can I quarrel with you a little bit? Yes. I understood that in Reagan – Regal Group – Yes, ma'am. Let's just call it Justice McClaren's opinion. In his opinion, the donee testified, we both signed those. Yes. Yes. So there was testimony that, you know, at the time or thereafter, so within the statute. That's something that concerns me, is that in both Justice McClaren's case and Confirst, there's testimony from the donees that we both signed, you know, at the time within the statute, either the time of the opening or thereafter. We both signed. There's testimony of that. Here, there's no contemporary signature created by the documents, nor is there any testimony by anyone, including the donee, that we both signed. That's correct. That is a concern to me because I see – I'm concerned that the Dubler case sets out the rule and it says you've got to have that signature. And, Judge, I believe that Mr. Lunsford testified that – He wasn't there. Right. No, I understand. He didn't know anything about the transaction, but he did talk about the practices and procedures of the bank and so forth. Right. But I believe he testified that based on the fact that the signature was unfound, based on the fact that the account had been open since 1982 and that the bank didn't have records of the opening of the account from 1982 due to a variety of things. Which is irrelevant, kind of, because it wasn't at that point that this gift, if it was intended to be made, was made. I think of that as when Mr. Villanueva signed. Judge, I would respectfully disagree just because I don't believe that anywhere in the statute it requires that the original owner of the account re-sign the account when someone is added to it. But, you know, my concern is because it says when an agreement permitting such payment is signed by all those persons, this is sub-A, at the time the account is opened or thereafter. Right. And the legislature didn't say that – According to you, if I sign and I open an individual account and then later I add, someone else is added and they sign. Yes. That's sufficient. I believe under the statute and under the case law, yes. In addition, Judge, I would point out that under the Redwood Group decision, and this goes to Justice Kennedy's point about intent, you don't need to have the signed agreement per se. Let's suppose that the signature cards were gone. I agree. We have all these other factors that the court can consider.   I agree. And that's what we presented evidence of in all the prior practices. The one thing there isn't evidence of, unless you want to point it out to me, other than her original signature on file, wherever that is, at the time this gift was made. Yes, ma'am. Or thereafter. I don't think, but I'm open to you telling me, there's any signature by the donor. And I'm of concern that that's what the Act requires, and I'm concerned that that's what Dubler requires. Because in Dubler, the husband presumably signed the signature card when he opened the account. Then later, the bank indicated his direction that his wife was a signator, she should be treated as a joint tenant with the right of survivorship. The Supreme Court said, there's no signature. We're not going to render part of the statute nugatory by allowing this procedure. And I guess I'm concerned about that, so I wanted to be up front and give you a chance to argue it. Sure. Judge, the Dubler decision, which I believe was decided in 1952, has been interpreted since then. And Justice McClaren didn't overrule the Dubler decision or overrule the statute. But what he, as the Conferenced Court pointed out in paragraph 19, it has, shall we say, interpreted it or modified the ruling. And it's the Conferenced Court said, quote, at paragraph 19, the principle in Ravel-Bruge is not that a signed agreement is unnecessary to create a joint tenancy in a bank account, but instead simply that the existence of a signed agreement may be proven or can be proven with evidence other than the agreement itself. So let's say that the bank had burned down and there was literally no evidence of a signature cut. We could still use the Ravel-Bruge factors to show that there was evidence of a prior joint tenancy. And that's what we did here at the trial level. We brought in the testimony from the banker. We brought in all the other accounts that were construed as joint accounts. And as was pointed out on the opening argument, the other side was asked about, well, why is his name on there? Why is it not tenants in common? Or why isn't it a convenience account? They never argued at the trial level that it was a convenience account or that it was tenants in common. So I would argue that they've made that position. Their position seemed to be it's all or none. It's an individual account and it belongs in the estate. Okay? And they presented no evidence that it was a convenience account. They presented no evidence whatsoever that it was a – and there's nothing to indicate that it was a convenience account. But, you know, again, just because I said it's a counsel on the other side. Yes, ma'am. Judge McLaren's opinion and Confer's both had testimony by the donee that we both signed at the time. And here we don't have that. Right. But as was pointed out in the – I believe it was the Ravel-Bruge decision, the testimony about we both signed at the time was from the donee, and that was given heightened scrutiny and not necessarily provided. Whereas – But the court accepted it. Well, the court filed it. It was given heightened scrutiny and then said look at all the other evidence that –  I think an application might be getting these cases conflated, but there was other evidence that the bank treated it as a joint account. And so it's looking – and I think, just as McLaren says, it's a totality of the circumstances.  Well, again, it's just so you know. My concern is there there was testimony that there was a signature. They just couldn't find the card and these banks purged these documents and so forth. Right. And as far as Justice McLaren put it in the opinion, he said – I already quoted the part about stating she intended to make Weinberg a joint account, but it went on to say in that the sole testimony of a donee is questionable and therefore should be scrutinized. There was sufficient corroborative evidence in this case. Yes. And so I would argue that there was sufficient corroborative evidence here at the trial level. And so you had the banks – With the statutory exception, if you come close enough to the statutory exception, I guess that's my concern. Yes, I believe we did. And the statutory exception talks about the fact that when such payment – agreement permitting such payment is signed by all those persons at the time that the account is opened or thereafter. It doesn't say it has to be reaffirmed. So where's the thereafter here? When on December 5, 2017, when Mr. – I opened another account? Well, on the other occasions when they opened other accounts, that's good circumstantial evidence that that was their intent. Don't forget, this account in 2017 was the last of several accounts that they had opened that were joint tenancy and which wasn't even challenged by the estate, okay, as being part of the estate. It was just this one account, the last joint account opened in 2017. And so as a result – This particular one, 1842. Yes, ma'am. And so as a result, that account had her name on it already. Then he came in and got added to it and signed his name. And as Justice Jorgensen pointed out, it says individual. We have the testimony from the bank executive that says it was a clerical error. And if it's a clerical error and it's a joint account, the agreement itself says joint account shall be owned as joint tenancy with the right of survivorship, not as tenancy by the entire. So the tenancy by the entire argument I don't think works at the trial level because the evidence shows that this was a clerical error. It should have been the joint account. His name was added on December 5, 2017. Her signature was on file. Now, is it possible that Antonio Villanueva walked into the bank and said, I just wanted to be added to Dorothy's account? No, it's not. With all due respect to common sense and logic, they had the prior joint accounts. They had her signature on file in this account. For whatever reason, she wasn't there that day. Okay? We don't know why. Was she sick? Was she ill? Did they call her on the phone? We don't know. The people who were there that day other than Antonio are dead or had moved on. So I guess my question would be is this case should not be overturned and the money returned to the estate. Worst case scenario, if this court wants to remand it and have me put Antonio Villanueva back on the stand to say, yes, I signed it and Dorothy said I could, you know, I can't argue. We have evidence that she signed it that day. We have evidence from the bank that, in fact, that she signed it originally, that they had opened up all these other joint accounts together over the years. I believe it was 2014 onward. And then also on this last day, she didn't go to the bank with him, but he was added to that account, and thereafter the bank treated it as a joint account. That's circumstantial evidence that that was the intent of the signer of the grand tour, and that was the regal bridge factors of exercise of authority and control in the survivor's understanding that this was, in fact, a joint account. The bank thought it was a joint account. Antonio Villanueva thought it was a joint account. Everybody involved thought it was a joint account until she died and then the estate came in. Because don't forget, he did withdraw amounts prior to her death on at least one occasion, and several times after his death, her death, he took money in and took money out, and the bank let him do it both times. And even if he hadn't done that, the Congress or the regal bridge court talks about the fact that sometimes, well, they talk at the end of the opinion, the bottom of 597 to 598, the only evidence indicating the lack of intent is that Wimberg did not withdraw funds for personal use during the student's life. Here he did, but even if he hadn't, it could still be considered a gift because it would be a gift for the future interest, you can have this after I die. And so if nothing else, we'd have that here. And so I guess what I'm saying is that it's not against the manifest way of the evidence when the trial court did this. If I can just have 30 seconds to conclude.  Thank you. Basically, Justice McClaren wrote regal bridge not to override the statute of the Supreme Court ruling, that he just construed it to say that you can have evidence of a joint account. The agreement itself, I think Judge McClaren recognized the harsh reality of the strict construence of a limitation on evidence. You can have evidence supporting the existence of the signed agreement. And he overruled the trial court 33 years ago because it had ruled against the survivor in favor of the estate because of the disallowance of other evidence. But this time the trial court got it right because it followed Justice McClaren's ruling. And we would ask you to uphold the trial court. Thank you. Thank you, counsel. All right, Mr. Evans, you may begin your rebuttal. Thank you, counsel. So let me be clear from the outset. The estate challenged this account because the signature card says individual. Within the record, other signature cards of the other accounts were put into evidence. Some of those where the signature card did exist, they say joint. So we have an obvious distinction between a card that says joint and a card that says individual. There's a point, Justice Mullin, that I had meant to clear up. You pointed out the language on that signature card, kind of within the terms and conditions, that says essentially joint accounts are to be treated as accounts with a right of survivorship. As to the 1842 account, that language just doesn't apply because it says it's individual. When you look at some of the other signature cards in the other accounts, it says joint and then you can read that language. A joint account means right of survivorship. But we can't just pretend, we can't reform this contract to say joint when it clearly says individual. But I guess, you know, I hear what you're saying. You're saying, oh, no, she couldn't have meant if we don't affirm, then there's no way except this becomes an individual account with no interest by the, you know, alleged or purported donee. That's what I hear you saying. You would have no interest in the account, reason being it said individual there. I hear what you're saying. You might be right. But I'd also question whether or not that was the original account card. You know, and they just carried that over. That was the bank's error. And I think the man testified to that, Mr. Lundford, it should have said joint. If they both signed it, then I guess you're saying that wouldn't be sufficient under the statute. Because the card said individual. Where there, I think, we certainly would have a horse race. Under Justice McLaren's case, where we would look at the totality of the circumstances, you know, including the relationship, how they treated the account, how the bank treated the account. I don't see it as black and white as you do there. If both had signed at the time or thereafter, that's the thing I'm concerned about. If both had signed, yes, we would have this problem because it says individual. The burden is on the party claiming the right of survivorship to introduce evidence, clear evidence of the existence of a joint account. You would certainly be arguing that his signature wasn't sufficient in the face of the designation of the account as individual. I continue to think there might be a horse race on that. I certainly would argue that his signature is not sufficient. All the evidence that the respondent introduced at the hearing, none of it went to the issue of whether a document exists which identifies this account as joint and which was signed by both parties. And that is what is required. All this other evidence, respectfully, goes to maybe the intentions, which I've said before, is not really relevant if you don't have the signed document. The intentions really don't matter. And we talked about the bank treated it this way. Well, respectfully, I think the bank treated it wrong. The estate isn't going after the bank for any funds that may have been withdrawn during or after Dorothy's life. But if they treated this as a joint account with right of survivorship and it wasn't, that doesn't change the fact that no right of survivorship was created and the funds should not be Antonio's. They should be turned back to the estate. I do also want to jump back into one question Your Honor had about the digital signature. And, again, this is the problem with looking backwards. Counsel mentioned Dorothy signed this thing back in 1982. That's good enough. The problem is, back in 1982, she clearly just had an individual account in mind. It's obviously a very material term to change an account from individual to joint. You can't just say, well, she signed it in 1982. We can call it whatever we want. We've had a new signature. But there were signatures clearly after 1982 of her at the bank. All these multiple other accounts opened years and years and years after the 1982 account, correct? Correct. And, of course, it's possible for somebody to gift one piece of property and not the other. So it's certainly conceivable that Dorothy could have gifted five or four out of five accounts, but not this one. And what's on paper is that this one remained individual. And if I could just finish one thought, I know my time is up. I'll certainly give you time to finish. But all of those other four or five accounts, the bank treated exactly the same way and now claimed it was their error. I mean, do we just ignore that? Do we ignore how the bank treats these accounts? I think if the way the bank treated the account was an error, that can't be evidence. But it's only an error if we conclude that the bank's treatment of a signature is against the statute. So your position would be if we were to adopt yours, for the sake of argument, we would be saying to all banks, don't accept a signature on file, don't accept a digital signature, or you put yourself out there for great liability. Now, you've graciously said, well, we're not going to come after the bank for any monies that might have been withdrawn or, as I note, a $14,000 deposit. I presume he would get that back. Is that your position? That if a bank makes a mistake and treats an account as a joint account for years and years and years, they're on the hook for anything that an estate thereafter claims? That would be my position, and we certainly hope that a bank does not make a mistake. And if I can, I think my final thought also goes to that question, if I may just finish. This idea of a signature on file, no evidence was presented really tying any other signature on Dorothy's file to this agreement, the signature card for the 1842 account. So a bank can rely on a digital signature if there's got to be some evidence that yes. Isn't that what the card said, signature on file? And that's what the bank, I forget his title, but he testified to. That's what that means. What Mr. Lunsford also testified to is that the signature card appears to prove, this is quoting his language, appears to prove that Dorothy did not sign the card in anybody's presence that day. Again, you can write the word signature on file, but there has to be some tie to did Dorothy manifest her agreements to these terms? And we still have this problem because it says individual, so maybe she agreed to this document, but it says individual. But what is the evidence that any of her signatures that were on the file actually manifest her consent to change this account from individual to joint? And that's, I think, where Responder runs into a problem. There really was no evidence, contemporaneous or thereafter, that Dorothy ever agreed to change this account from individual to joint. I have no other questions. Thank you very much, counsel. Thank you, Your Honor.